**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOSEPH S. TARZIA, | ) | 3:24-CV-2000 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, NATIONAL | ) | |
| ASSOCIATION, | ) | April 10, 2026 |
| *Defendant*. | | |

## RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff Joseph Tarzia commenced this action against Defendant Wells Fargo Bank, National Association, challenging certain alleged fraudulent misconduct related to a 2009 state foreclosure proceeding. Specifically, Plaintiff alleges that Defendant misrepresented its status as a holder and/or a loan servicer with respect to the subject note and mortgage, and later submitted a false affidavit in the underlying foreclosure action. Defendant has moved to dismiss the complaint. Plaintiff opposes this motion. For the reasons set forth in this order, Defendant's motion to dismiss is GRANTED, without leave to amend.

## I.    FACTUAL BACKGROUND

The Court derives the following facts from the complaint and documents filed in the underlying foreclosure action, of which the Court may take judicial notice. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

A. The Foreclosure Proceeding

On February 18, 2009, Wells Fargo Bank, National Association as Trustee for the Certificate Holders of Structured Asset Mortgage Investments II Inc. Structured Asset Mortgage

Investments II Trust 2007-AR4, Mortgage Pass-Through Certificates, Series 2007-AR-4[1] commenced a foreclosure action in Connecticut Superior Court against Plaintiff, related to the property located at 138 North Lake Drive, Stamford Connecticut 06903. *See Wells Fargo Bank, National Association as Trustee v. Joseph Tarzia, et al.*, No. FST-CV-09-6001209-S (Conn. Super. Ct.); *see also* Def.'s Ex. 1, ECF No. 10-1 at 2 (state court docket); Def.'s Ex. 2, ECF No. 10-2 at 16–29 (state court complaint). Wells Fargo sought to foreclose on a note and mortgage executed and delivered by Plaintiff originally to American Brokers Conduit on June 22, 2007, and later assigned to it. ECF No. 10-2 at 16, 19. This litigation ensued for several years. In the course of the underlying foreclosure proceedings, on March 19, 2012, Wells Fargo filed a motion for summary judgment with supportive documents and exhibits, including an affidavit of Geraldina Mazariegos. *See id.* at 5. After its summary judgment motion was granted as to liability, Wells Fargo moved for a judgment of strict foreclosure on May 13, 2013. *Id.* The state court granted this motion and issued a judgment of strict foreclosure on May 28, 2013. *Id.* at 6. The Connecticut Appellate Court later affirmed the trial court's judgment of strict foreclosure. *See Wells Fargo Bank, N.A. v. Tarzia*, 150 Conn. App. 660, 663 (2014) (noting Plaintiff did not oppose Wells Fargo's summary judgment motion), *cert. denied*, 314 Conn. 905 (2014).

Plaintiff nonetheless continued to litigate in state court. In March of 2016, the state court denied Plaintiff's motion to vacate the judgment and to dismiss the complaint. *See* ECF No. 10-2 at 8; Def.'s Ex. 3, ECF No. 10-3 at 2–22. This decision was affirmed by the Connecticut Appellate

---

[1] In this action, the named Defendant is Wells Fargo Bank, National Association. But it is clear from Plaintiff's allegations that he has intended to sue the foreclosing party in the underlying state court action, Wells Fargo Bank, National Association as Trustee for the Certificate Holders of Structured Asset Mortgage Investments II Inc. Structured Asset Mortgage Investments II Trust 2007-AR4, Mortgage Pass-Through Certificates, Series 2007-AR-4. Because it is the "substance of the pleading, not the caption, that determines the identity of the parties," *U.S. Bank, Nat'l Ass'n v. UBS Real Estate Securities Inc.*, 205 F. Supp. 3d 386, 409 (S.D.N.Y. 2016) (internal citation omitted and collecting cases), the Court construes the complaint as bringing suit against the foreclosing party in the state court action (hereafter, "Defendant" or "Wells Fargo").

Court, *see Wells Fargo Bank, N.A. v. Tarzia*, 186 Conn. App. 800 (2019), and Plaintiff's petition for review was returned by the Connecticut Supreme Court, *see id.*, Conn. Supreme Court, Appeal No. SC 180340 (returned February 8, 2019).

B.  The Instant Action

Plaintiff commenced this action in federal court on December 17, 2024.  *See* Compl., ECF No. 1.  The crux of Plaintiff's complaint is that Defendant engaged in fraudulent conduct both in connection with the origination of the mortgage loan and throughout the underlying foreclosure proceedings.  Specifically, Plaintiff alleges that although he executed the subject note and mortgage with American Brokers Conduit with the expectation that he would receive funds from that entity, the loan proceeds instead came from a different third-party lender, which Plaintiff believes rendered the note and mortgage "void and unenforceable for failure of consideration."  *Id.* ¶¶ 4, 19 (First Count), 22 (First Count).[2]  Plaintiff alleges that American Brokers Conduit did business under the entity, American Home Mortgage Co., who "channel[ed] third-party lender funds to fund proposed loans, secured by mortgage pledges of realty, made by various brokers who steered business to [it]."  *Id.* ¶ 3.  Plaintiff further alleges that this information was not disclosed to him.  *Id.* ¶ 4.  Plaintiff's "servicing rights" with the third-party lender were then assigned to another third-party entity and subsequently sold to a third entity.  *Id.* ¶ 6.  Then, "the non-party entity Specialized Loan Servicing Inc." ("Specialized"), with Defendant's permission, began to demand that Plaintiff pay the amounts due on the note and mortgage to it, apparently without legal authority.  *Id.* ¶ 11.

Next, Plaintiff alleges that in support of its motion for summary judgment filed in the underlying foreclosure action, Defendant submitted an affidavit of Geraldina Mazariegos, who

---

[2] Plaintiff's complaint contains duplicate paragraph numbering.  Thus, the Court has specified which paragraphs it references as necessary.

represented that she was the "Vice President of JP Morgan Chase Bank, N.A., the servicer to Wells Fargo, N.A." *Id.* ¶¶ 19 (Second Count), 20 (Second Count). According to Plaintiff, that representation was false, as Mazariegos was only thirty-two years old and had only obtained an associate's degree during the relevant time period. *Id.* ¶ 24 (Second Count). Plaintiff contends that it is thus "implausible" that she served as vice president of any bank at the relevant time. *Id.* (Second Count). Plaintiff further alleges that the individual who notarized the affidavit was affiliated with an agency that had no relation to either Wells Fargo or JP Morgan Chase Bank. *Id.* ¶ 21 (Second Count). Plaintiff contends that this "tainted" affidavit constituted fraud on the court and was intended to induce the state court to grant Defendant's summary judgment motion, thereby causing Plaintiff harm. *Id.* ¶ 28 (Second Count).

Plaintiff asserts four claims arising from these factual allegations. In Count One, Plaintiff alleges that Defendant violated the Real Estate Settlement Procedures Action ("RESPA") and its enabling regulation, Regulation X, and the Fair Debt Collection Practices Act ("FDCPA"), by executing a defective note. *Id.* at 6. In Count Two, Plaintiff brings a claim of fraud on the court based on the allegedly defective affidavit filed in the state foreclosure action. *Id.* at 8. In Count Three, Plaintiff alleges that the acts and practices of Specialized of falsely holding itself out as a legitimate loan servicer, which were purportedly "adopted and tolerated by Defendant," violated the Connecticut Unfair Trade Practices Act ("CUTPA"). *Id.* at 9; *see also id.* ¶ 18. Finally, in Count Four, Plaintiff invokes the doctrine of unclean hands, contending that the orders issued by the state court were procured by Defendant's fraud and pattern of deceit—including through submission of the false affidavit. *Id.* at 10.

As relief, Plaintiff seeks punitive and compensatory damages, attorneys' fees, and declaratory and injunctive relief. *Id.* at 11–12. With respect to his requests for declaratory and

4

injunctive relief, Plaintiff requests that the Court declare as void any orders or judgments issued by the state court and enjoin Defendant from obtaining title to and possession of the subject property. *Id.* Plaintiff further requests that the Court find that the certificate of title filed in Stamford, Connecticut land records was "procured in falsity" and order that it be stricken from the applicable land records. *Id.*

Defendant has moved to dismiss the complaint. ECF No. 10. Plaintiff opposes this motion. ECF No. 13.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and

"a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

## III.    DISCUSSION

The Court finds that it lacks subject-matter jurisdiction to adjudicate Plaintiff's claims insofar as he requests that the Court review or reverse any decisions issued by the state court in the underlying foreclosure action. And, in any event, Plaintiff's claims are untimely. Thus, the complaint must be dismissed without leave to amend.

### A.   *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is derived from two U.S. Supreme Court cases, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accreddited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014) (citing Exxon Mobil Corp. v. Saudi Basic*

*Indus. Corp.,* 544 U.S. 280, 283–84 (2005)).  The doctrine is rooted in the principle that the jurisdiction to reverse or modify a state court judgment is exclusively within the authority of the state supreme court.  *Id.* at 426.

For the *Rooker-Feldman* doctrine to apply, four elements are required: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Id.* (cleaned up; internal quotations omitted) (quoting *Hoblock v. Albany Ctny. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005)).

Here, it is clear that the first and fourth elements are satisfied.  Plaintiff lost in state court, as evidenced by the judgment of strict foreclosure, the Connecticut Appellate Court's affirmance of that decision, and the Connecticut Supreme Court's denial of Plaintiff's petition for review. Additionally, the foreclosure judgment was issued in 2013, more than eleven years prior to Plaintiff commencing the instant action.  The Court thus focuses its inquiry on the remaining two elements:  whether Plaintiff's injuries were *caused* by the state court judgment and whether Plaintiff invites review and rejection of that judgment.

> 1. *Counts Two and Four*

As to Plaintiff's claims in Counts Two and Four, both of these elements are satisfied.  In these two counts, Plaintiff alleges that Defendant submitted a false affidavit in support of its motion for summary judgment in the foreclosure action, acting with unclean hands.  Plaintiff also alleges that this affidavit induced the state court to issue unfavorable orders, decisions and judgments, which caused him harm.  *See* ECF No. 1 ¶ 28 (noting that the affidavit "was intended to induce the Court to wrongly grant Summary Judgment, and did so induce the Court, all to the great harms, losses and injuries of plaintiff, for what plaintiff demands money damages and other relief"); *id.* ¶

7

35 (the false affidavit induced the court to "issue Orders, Decisions and Judgments favorable to defendant . . . all to the harms, losses and injuries of plaintiff").  Although it is not entirely clear which specific state court order(s) Plaintiff challenges, these allegations are sufficient to show that Plaintiff was harmed by a judgment or decision rendered by the state court.

Additionally, Plaintiff's complaint invites review and rejection of the state court judgment. Plaintiff contends that any "order, decision or judgment" issued by the state court is void, given that they were procured by deceit.  *Id.* ¶ 36.  Plaintiff then expressly requests that the Court enjoin Defendant from taking title and possession of the subject property, *id.* ¶ 38, which can be construed as a request to effectively undo the judgment of strict foreclosure entered by the state court in Defendant's favor.

In assessing allegations of fraud and submissions of false documents similar to those raised by Plaintiff here, the Second Circuit has held that such claims are barred by the *Rooker-Feldman* doctrine. *See e.g.*, *Vossbrinck*, 773 F.3d at 427 (barring claims that a state foreclosure judgment was obtained via fraud, as it would require "the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error"); *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (same).  In order to resolve Plaintiff's claims concerning Defendant's alleged fraud and the allegedly false affidavit filed to induce the state court to issue unfavorable decisions, the Court would necessarily have to review the validity of the state court's orders—a task the *Rooker-Feldman* doctrine prohibits.  Thus, the Court lacks jurisdiction over Plaintiff's claims in Counts Two and Four.

### 2. *Count One*

Plaintiff's claim in Count One, concerning Defendant's status as a proper holder of the subject note and standing to enforce the note in the foreclosure action is a closer call.  To be sure, courts have determined that they lack jurisdiction to decide nearly identical claims in similar

8

factual circumstances.  *See Vossbrinck*, 773 F.3d at 427; *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 289 (E.D.N.Y. 2024) ("To resolve these claims, this Court would need to review whether Wells Fargo was the owner or holder of the Note and the Mortgage when it commenced the Second Foreclosure Action and whether the documents relied upon by Wells Fargo – *i.e.*, the Note, Mortgage, Loan Modification Agreement, and Assignment – were valid.  But these determinations were necessarily made by the state court when it entered the Foreclosure Judgment. . . . Consequently, for Plaintiff to be vindicated on these claims, this Court would need to review the state court's determinations and ultimately decide that they were wrong; something *Rooker-Feldman* explicitly prohibits."); *Mendez v. Pretium Mortg. Credit Partners I, Loan Acquisition, LP*, No. 21-CV-826 (KAM) (JRC), 2023 WL 8283148, at \*4 (E.D.N.Y. Nov. 30, 2023) ("because the state court must necessarily have ruled on the validity of the underlying loan and mortgage in rendering its decision, Plaintiff's request for this Court to review the same loan and 'nullify' it meets the substantive requirements of *Rooker-Feldman*").  These cases suggest that the Court lacks jurisdiction over Count One here, as the legitimacy of the note and mortgage and Defendant's standing to enforce them were likely addressed by the state court, by virtue of its issuance of the judgment of strict foreclosure in Defendant's favor.

Courts have also recognized, however, that claims based on fraudulent conduct are not barred by the *Rooker-Feldman* doctrine, where a plaintiff independently challenges the underlying misconduct, rather than the state court judgment itself.  *Beasley v. Indy Mac Bank*, No. 16-CV-4629 (JS) (AKT), 2018 WL 1611667, at \*7 (E.D.N.Y. Feb. 26, 2018) (fraudulent inducement claim not barred by *Rooker-Feldman*; collecting cases), *report and recommendation adopted*, 2018 WL 1611382 (E.D.N.Y. Mar. 31, 2018).  "The Second Circuit has instructed that in attempting to distinguish between claims that require a federal court to review a state court

judgment and those that seek damages from defendants for injuries suffered from an alleged fraud involving a state court judgment, courts must scrutinize the injury of which a plaintiff complains as a necessary step toward determining whether the suit impermissibly seeks review and rejection of a state court judgment . . . or permissibly seeks some other remedy." *Gifford v. United N. Mortg. Bankers, Ltd.*, No. 18-CV-6324, 2019 WL 3685225, at *8 (S.D.N.Y. July 8, 2019), *report and recommendation adopted sub nom.*, 2019 WL 3564581 (S.D.N.Y. Aug. 6, 2019) (citing *Charles v. Levitt*, 716 F. App'x 18, 21 (2d Cir. 2017) (cleaned up)).

Here, on one hand, Plaintiff appears to challenge the defective note and its purportedly defective assignment to Defendant, suggesting that the injury he seeks to redress relates to the mortgage loan's origination and later assignment, not any judgment from the state court. Indeed, Plaintiff does not point to any state court orders in Count One. On the other hand, elsewhere in complaint, particularly in the section titled "Allegations Common to All Counts," Plaintiff alleges that Defendant "permitted its name to be misused as plaintiff in litigation," to his detriment. ECF No. 1 ¶ 18. This allegation, coupled with Plaintiff's broader claims (which often overlap) and requested relief throughout the complaint that seeks to effectively undo the state court's judgment, demonstrate that Plaintiff's injuries in Count One stem from the state court judgment of strict foreclosure and invites review of that judgment. Plaintiff does not endeavor to argue otherwise. Accordingly, the Court finds that Plaintiff's claim in Count One is barred by the *Rooker-Feldman* doctrine and it lacks jurisdiction to decide it.

### 3. *Count Three*

Finally, the Court concludes that Count Three is not barred by the *Rooker-Feldman* doctrine (but fails for other reasons discussed below).

In Count Three, Plaintiff claims that Specialized—a non-party to this litigation—falsely held itself out as a legitimate loan servicer, demanded mortgage payments from Plaintiff, and

thereby committed an unfair trade practice, which was purportedly "adopted and tolerated by Defendant." ECF No. 1 at 9; *id.* ¶ 18. The Court assumes that Specialized was the entity that was to collect Plaintiff's mortgage payments on behalf of Defendant, and that when Plaintiff failed to make those payments to Specialized, Defendant initiated the foreclosure proceedings. But as the state court complaint does not make that explicit, *see* ECF No. 10-2 at 16–22, and as Specialized was not a party in the foreclosure action, the Court cannot conclude that Plaintiff's CUTPA claim in this case complains of an injury *caused* by the state court's judgment of strict foreclosure. Thus, Count Three is not barred by the *Rooker-Feldman* doctrine.

B.  Timeliness of Plaintiff's Claims

Even if the Court could exercise jurisdiction over Plaintiff's claims in Counts One, Two and Four, all of the claims (including Count Three) would warrant dismissal because they are barred by the applicable statutes of limitations.

*1.  Counts One and Three:  Violations of the RESPA, FDCPA and CUPTA*

The FDCPA was enacted to, among other things, "eliminate abusive debt collection practices by debt collectors," and to "protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Claims brought under the FDCPA are subject to a one-year statute of limitations, which runs from the date on which the alleged violation occurs. 15 U.S.C. § 1692k(d). With respect to RESPA claims, the statute of limitation is three years from the date of the occurrence of the violation. *See* 12 U.S.C. § 2614. The same three-year statute of limitation applies to CUTPA claims. *See Speer v. Select Portfolio Servicing*, No. 3:23-CV-192 (JAM), 2023 WL 4850556, at *6 (D. Conn. July 28, 2023); *see also* Conn. Gen. Stat. § 42-110g(f) (providing that an action under this section may not be brought more than three years after the occurrence of a violation).

Here, Plaintiff's complaint alleges in Count One that Defendant violated RESPA and the FDCPA by enforcing the subject note despite allegedly lacking a valid legal existence or proper

11

status as holder of the note, and in Count Three that Defendant violated CUTPA by condoning Specialized's attempt to portray itself as a legitimate loan servicer, when it was not. With respect to both of these counts, the subject note was executed in 2007 and enforced by Defendant through the underlying foreclosure action in 2009, which resulted in a state court judgment in 2013. Plaintiff did not commence this action until 2024, well beyond the FDCPA's one-year limitations period and the RESPA's and CUTPA's three-year limitations period. Thus, Plaintiff's claims under all three statutes are time-barred regardless of the date construed as the applicable date of the alleged violation.[3]

### 2. Count Two and Four: Fraud on the Court and "Unclean Hands"

The Court likewise finds untimely Plaintiff's claims concerning fraud on the Court and the unclean hands doctrine based on the allegedly false affidavit submitted in the state foreclosure action. To the extent that Plaintiff intends to assert a fraud-based claim, in Connecticut, "[a]ll common law tort claims, including claims for fraud . . . are subject to the three-year statute of limitations as set forth in Section 52–577 of the Connecticut General Statutes." *Est. of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 203 (D. Conn. 2007) (cleaned up; internal citation omitted). Based on the record, the subject affidavit in support of the summary judgment motion was filed on March 19, 2012, and that motion was granted on September 7, 2012, more than twelve years before Plaintiff commenced the instant action. *See* ECF No. 10-2 at 5. Thus, Plaintiff's claims in Counts Two and Four are untimely.

Given the Court's holdings herein, it need not reach Defendant's remaining arguments. It notes, however, that to the extent Plaintiff's claims here—particularly Count One—are based on

---

[3] To the extent that Plaintiff alleges that Defendant violated the Truth in Lending Act ("TULA") by failing to make certain required disclosures, that claim also fails as the statute of limitations for a private action under TILA is one year. *See Beasley*, 2018 WL 1611667, at *9.

his longstanding contention that Wells Fargo did not have standing to pursue the foreclosure action because it was not the holder of the note and mortgage, the Connecticut Appellate Court has previously held that this argument is barred by the doctrine of claim preclusion, as it was litigated in Plaintiff's first state court appeal. *See Wells Fargo Bank, N.A.*, 186 Conn. App. at 812–13 ("[Tarzia's] claim that the plaintiff did not possess the note at the time it filed this foreclosure action was squarely before this court in the parties' initial appeal. . . . [Tarzia] did not attempt to rebut the plaintiff's status as a holder of the note and mortgage; indeed, he did not file any opposition to the plaintiff's motion for summary judgment. . . . In light of the foregoing, we decline to allow the defendant the opportunity to relitigate the matter in this appeal."). The Court agrees with the Connecticut Appellate Court's analysis.

## IV.    CONCLUSION

For the reasons described herein, Defendant's motion to dismiss is GRANTED. Because the defects in Plaintiff's complaint are substantive and better pleading would not cure them, the Court declines to grant Plaintiff leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). The Clerk of Court is directed enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 10th day of April, 2026.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

13